# EXHIBIT B

**Chris A. Johnson, JD**
**Highbanks Insurance Professionals**
318 S. Broadleigh Road
Columbus, OH 43209
614-315-8926
www.hip-consulting.com
chris.johnson@HIP-Consulting.com

January 8, 2020

Ms. Yvonne Sell
Mr. Nathanael Archuleta
**Attorneys at Law**
Furtado Law
3773 Cherry Creek
North Drive Suite 755
Denver, Colorado 80209

***Re: Jamis Companies, Inc. v. Owners Insurance Company***

Dear Ms. Sell & Mr. Archuleta,

You have asked me to review the above captioned claim and case in litigation, and to provide you with my expert analysis and opinion with regard to the claims handling activities by Owners Insurance Company, the issuer of the property insurance policy issued to Jamis Companies, Inc. You have provided me with a number of documents for review, those are itemized on an attachment to this report.

My opinions expressed herein are made to within a reasonable degree of certainty in insurance industry practices, standards and customs. My qualifications to render this expert opinion include over 35 years of combined education, training and experience in the claims and legal operations of the insurance industry, more specifically set forth on my attached Curriculum Vitae.

My fee schedule for services is attached. Payment for my services is NOT contingent upon the opinions expressed herein, nor is it contingent upon the outcome of this matter. I respectfully reserve the right to amend and/or supplement this opinion should additional materials become available for my review.

## I. FACTS

Jamis Companies, Inc. (Jamis) paid premiums for a policy of commercial property insurance from Owners Insurance Company (Owners), Policy No. 14463274899642, to protect their property located at 775 Sheridan Blvd., Lakewood, CO, 80214. The policy provided coverage for, among other things, damage to the property resulting from hail.

On May 8, 2017, a hailstorm caused significant damage to the Jamis property identified above. Jamis notified Owners of their damage, and Owners set up their claim number 074-0000268-2017 for Jamis. Owners arranged for a company called Catastrophe Specialist, Inc. (CSI) to inspect the hail damage at the Jamis property, and to prepare an estimate for repairs of the damage. CSI isn't a contractor, nor would they be doing any of the work, they are an independent adjusting and estimating company that Owners paid to prepare an estimate – CSI is an agent for Owners.

CSI visited the Jamis property on or about May 15, 2017 and confirmed extensive hail damage to the property including damage to various sections of the different types of roofing on the insured building. There is no dispute about the cause of the damage to the insured's property, and there is no dispute that the hail stones that struck the insured's property were large enough to cause direct physical damage to the commercial property.

Owner's issued their estimate of hail damage repairs, prepared by CSI, that included the following repair estimates:

Replacement Cost Value (RCV) - $16934.00
Actual Cash Value (ACV) – $12,101.00
Recoverable Depreciation - $4,833.00

On July 13, 2017, Owner's paid Jamis based upon the ACV amount of $12,101.00 less the policy $5000.00 deductible, issuing a check to Jamis for $7,101.00.

CSI completed a second estimate, a reinspection, approximately one year later, this one totaling:

RCV - $24,789.00
ACV - $19,956.00
Recoverable Depreciation - $4,833.00
$5,000.00 deductible

The net difference between the two estimates was $7,854.00. Owners records indicate that a check for this amount was sent to Jamis on or about June 28, 2018, but was returned due a mailing address issue. (AUTOJAMIS000561) The revised CSI estimate brought the total due and payable to Jamis, according to Owners, to $14, 955.00.

The second estimate increase and payment was due to the increased repair cost on the 25-year COMP roof, and to a revision for the repair/replacement costs of an outdoor sign. The increased cost on the 25-yr COMP roof was due to repair/replacement requirements to meet local building codes. This is covered by the Ordinance Or Law coverage form. (AUTOJAMIS000096-98)

The CSI reinspection was requested when Jamis's roofer notified Owners that he could not do the job for the amount of CSI's first estimate, therefore he requested a reinspection. (AUTOJAMIS000562)

**It is important to note that while the 25-year COMP roof estimate by CSI changed to include code updates, the Modified roof and the EPDM roof repair estimates remained the same from the first CSI estimate to the second CSI estimate.**

Jamis has taken the position that Owners failed to recognize the EPDM roof required total replacement per the Lakewood, CO building codes, and therefore, Owners has refused to pay policy benefits to Jamis to cover the cost of building code compliance for the repairs/replacement of the Modified and EPDM roofs that were damaged by hail. Jamis's allegations are more fully expressed in their Complaint filed in this matter.

## II. ANALYSIS & OPINION

**Owners owes Jamis the duty of good faith and fair dealing in the handling of their claims and the prompt payment of all policy benefits. Owners is also required to comply with The Colorado Revised Statutes.**

An insurance policy is essentially a "promise to pay". The basic agreement is that in exchange for the premium an insured pays, the insurance company agrees to pay you in the event of a covered loss.

The "promise to pay", and the fulfillment of that promise through the timely payment of ALL policy benefits, is our expectation, it's why we pay premiums. This expectation, this standard, is why there are laws in Colorado that govern how insurance companies handle claims.

It is also why every property insurance policy includes the implied covenant of good faith and fair dealing. Even though this isn't written in the contract, the promise to treat parties fairly, and pay all policy benefits on a timely basis, and to not unreasonably deny or delay policy benefits, automatically exists in the insurance policy contract. It is a standard, practice and custom within the insurance industry to operate and handle claims in a good faith manner – fairly.

While this opinion letter is not meant to be a legal brief, portions of the Colorado Revised Statutes are applicable to this discussion, as they embrace the tenets of good faith claims handling set forth above. C.R.S. 10-3-1115 reads:

## Colorado Revised Statutes Title 10. Insurance § 10-3-1115. Improper denial of claims--prohibited--definitions—severability

**(1)(a) A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant.**

**(b) For the purposes of this section and section 10-3-1116 : (I) "First-party claimant" means an individual, corporation, association, partnership, or other legal entity asserting an entitlement to benefits owed directly to or on behalf of an insured under an insurance policy. "First-party claimant" includes a public entity that has paid a claim for benefits due to an insurer's unreasonable delay or denial of the claim.**

**(II) "First-party claimant" does not include:**

**(A) A nonparticipating provider performing services; or**

**(B) A person asserting a claim against an insured under a liability policy.**

**(2) Notwithstanding section 10-3-1113(3) , for the purposes of an action brought pursuant to this section and section 10-3-1116 , an insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.**

Thus, Owners not only has a duty to pay all policy benefits due and owing to Jamis as outlined in the policy wording and implied covenants to the policy, Owner's is required by statute to do the same. These are the guiding principles found within the insurance industry as standards, practices and customs.

**Owners unreasonable denial and/or delay in paying ALL policy benefits, including those for Ordinance Or Law protection to Jamis, violated the terms of their policy with Jamis, and constitutes a violation of the applicable C.R.S.**

Owners knew or should have known about the applicability of the City of Lakewood, CO Building Ordinances to all features of this loss, including the damage and repairs to the Modified roof and EPDM roof outlined in the estimates. However, the second estimate prepared by CSI for Owners only included a building code update for the 25-yr COMP roof. Owners neglected to update the estimates for the Modified and EPDM roofs, and their repair estimate remained the same.

The basic property coverage form excludes coverage for Ordinance Or Law, per the following language:

***B. EXCLUSIONS 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.*** (AUTOJAMIS000081)

***a. Ordinance Or Law - The enforcement of any ordinance or law:***

***(1)Regulating the construction, use or repair of any property; or***
***(2)Requiring the tearing down of any property, including the cost of removing its debris.***

***This exclusion, Ordinance Or Law, applies whether the loss results from:***

***(a) An ordinance or law that is enforced even if the property has not been damaged; or***
***(b)The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property***

However, Ordinance Or Law coverage is added back in to the Jamis policy by endorsement. It is a three-page form (AUTOJAMIS000096-98) that is attached to this report for reference. It specifically adds the coverage protection Jamis relies upon to the policy.

The record in this claim reflects that on January 5, 2018, Jamis, through UB Code Roofing Consultants of Denver (UB), contacted Owners to advise of Jamis's supplemental claim on their roof. UB supplied Owners with an estimate for additional repairs of $24,239.00. (AUTOJAMIS000315-320)

On January 22, 2018, Owners questions UB on their reasoning for the supplement, specifically noting the EPDM roofing membrane. (AUTOJAMIS000324)

On March 16, 2018, ECO Roof and Solar (ECO) prepares a detailed and reasoned estimate for the Jamis roofing repairs. (AUTOJAMIS000327-341) The ECO estimate with explanations regarding building code requirements was transmitted to Owners on or around March 21, 2018. ECO estimated that the RCV of the hail damage to the Jamis property was $126,383.00.

ECO provides Owners with information about the roofing materials and the building code requirements. ECO also explains for Owners that ECO personally met with the city building department to discuss the concerns about trying to repair the roof versus replace it. ECO was certain, based upon this meeting, that the building code required total roof replacement for the EPDM system. (AUTOJAMIS000342)

On April 24, 2018, Owners e-mails the City of Lakewood's building department, asking:

***"would code require that we tear the entire roof off all the way down to the decking, and rebuild with proper insulation requirements, etc., or would the repair just around the perimeter be sufficient?*** (AUTOJAMIS000382)

Doug Gunther's (of the City of Lakewood building department) reply:

***"I think it depends on how we issue the permit. If the permit is to replace a repair flashing, that is one thing. If you are repairing or replacing more the 100sq ft of EPDM that is another."***

Owners shares this e-mail reply with ECO, and ECO provides their interpretation of Gunther's reply. ECO also notes that while they believe code enforcement requires a new roof for Janis, there are practical considerations as well for a proper repair that includes a total roof replacement. This includes the ensuing risks of a partial tear-off of a fully adhered EPDM roof, including damage to the fiberboard, and adding a seam to a roof with ponding water on it. ECO points out that this type of repair will only create more liability and issues for the Jamis property.
(AUTOJAMIS000429)

On May 14, 2019, Jamis informed Owners that the roofing repairs were completed, and that their roofer (UB) submitted an invoice totaling $129,533.00. Jamis requested directions from Owners on next steps for having their claim paid so they could pay their contractor. There was a sense of urgency in Jamis's request. (AUTOJAMIS000514)

Shortly thereafter, The Furtado Law Firm was retained by Jamis to represent them in this matter.

**Owners had a duty to look for and reasonably apply coverage to Jamis's hail damage loss. This includes the Ordinance Or Law Coverage.**

Owners failed to look for applicable Ordinance Or Law coverage in their initial inspection and analysis of damage done by their agent CSI. It is a standard and practice when assessing hail damage to a roof, to make inquiries about local building codes and ordinances. Commercial property insurers are on notice that municipalities adopt certain building code requirements that directly impact claims handling and coverage determinations.

In this claim, there is no record that Owners or CSI ever considered the existence or specifications of applicable building codes to this loss. It wasn't until Jamis's roofer UB notified Owners about the deficient CSI estimate for repairs that Owners first realized there was an Ordinance Or Law aspect to this claim - UB could not perform the required work for the price of the original CSI estimate. UB noted in their estimate that the EPDM roof would require replacement.

ECO, on behalf of Jamis, then further explained the reasoning for the EPDM roof replacement, detailing several compelling reasons:

1. Roof replacement is required by code
2. Roof replacement is required because a partial tear-off necessarily destroys the fiberboard of the adhered-roof system resulting in a patch and seam, both of which are not advisable

3. The flat nature of the roof causes frequent water ponding, and this creates a natural risk of infiltration to roof patches and seams in the material

At this point, we have two roofing contractors (UB and ECO) that have opined that Jamis needs a new roof. All indications are, both from a building code analysis and professional opinions on the best method of repair, that a new roof is warranted. Owners policy provides coverage for a new roof under these circumstances. Even Owners agent CSI has around this time, May 2018, issued a revised estimate that included code updates to the 25-yr COMP roof on the Jamis property.

Owners did attempt to clarify for themselves what the code enforcement would require regarding the Jamis roof. However, this was done through e-mail and a phone discussion. The e-mail reply from the City of Lakewood indicated that it depended on how the repairs were permitted. He specifically noted that if the EPDM roof required more than 100 sf of replacement, then "that' was a different story from just a flashing repair.

Furthermore, ECO's representative actually met in person with the City of Lakewood to explain the project details, including showing pictures of the roof. ECO's interpretation of the building code requirements was well informed and consistent with UB's opinions on proper repair requirements. CSI's revised opinion that building code updates played a role in the adjustment of this loss further supports Jamis's contentions that Owners had been unreasonably denying and/or delaying the payment of policy benefits in this loss.

Owners had no reasonable basis to deny and/or refuse policy benefits for replacement of the entire EPDM roofing system. Setting aside the code requirements, which in and of itself is compelling for roof replacement, there is clear and unrefuted evidence in the claim file that the proper way to repair the roof is roof replacement. ECO provided thoughtful insight into the reasoning for roof replacement, given the type of adhered roof system and high potential for problems down the road.

## III. Conclusion

**It is my expert opinion that Owners:**

1. Failed to pay ALL policy benefits due and owing to Jamis
2. Unreasonably denied and/or delayed the payment of policy benefits to Jamis, including the adjusted ACV payment they attempted to pay one year after the loss date, and those benefits due and owing for the proper repairs of their roofing systems, including benefits due and owing under the Ordinance Or Law code updates
3. Fell below the standard of care for property insurance claims adjustment by failing to investigate applicable building code requirements at the outset of this claim, thereby denying a prompt and fair adjustment of Jamis's claim
4. Owed Jamis the duty to work with the Jamis's contractors who had actual experience in the repair/replacement of EPDM roofing systems, and who were also familiar and experienced with applicable building codes

5. Breached their contractual obligations owed to Jamis under the policy of insurance by failing to pay ALL benefits as promised
6. Is required to follow good faith claims handling practices and standards, this includes compliance with C.R.S. Section 10-3-1115, their unreasonable denial and/or delay in the payment of ALL policy benefits constitutes a breach of their duties owed to Jamis under the Colorado Revised Statutes and the tenets of good faith claims handling.

These opinions are made to within a reasonable degree of certainty in insurance industry standards, practices and customs.

Respectfully submitted,

Chris A. Johnson, JD

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ORDINANCE OR LAW COVERAGE

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CAUSES OF LOSS - SPECIAL FORM
CAUSES OF LOSS - BROAD FORM
CAUSES OF LOSS - BASIC FORM

**A.** Each Coverage - Coverage **A**, Coverage **B**, Coverage **C** and Coverage **D** - of Section **E. Coverages** below, is provided under this endorsement only if a Limit of Insurance for that Coverage(s) is shown in the Declarations and then only with respect to the building identified for that Coverage(s) in the Declarations.

**B.** The following provisions do not apply to the extent that they conflict with the coverage provided by this endorsement only:

1. BUILDING AND PERSONAL PROPERTY COVERAGE FORM:
   a. **E. LOSS CONDITIONS:**
      (1) **4. Loss Payment, b.**; and
      (2) **7. Valuation, b.**, second paragraph; and
   b. **G. OPTIONAL COVERAGES, 3. Replacement Cost, f.**
2. CONDOMINIUM ASSOCIATION COVERAGE FORM:
   a. **E. LOSS CONDITIONS:**
      (1) **4. Loss Payment, b.**; and
      (2) **8. Valuation, b.**, second paragraph; and
   b. **G. OPTIONAL COVERAGES, 3. Replacement Cost, f.**
3. Section **B. EXCLUSIONS, 1.a.** of CAUSES OF LOSS - SPECIAL, BROAD and BASIC FORMS.

**C. Application Of Coverage(s)**

The Coverage(s) provided by this endorsement apply only if both **C.1.** and **C.2.** are satisfied and are then subject to the qualifications set forth in **C.3.**

1. The ordinance or law:
   a. Regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and
   b. Is in force at the time of loss.

   However, coverage under this endorsement applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this endorsement.

2. a. The building sustains direct physical damage that is covered under this policy and such damage results in enforcement of the ordinance or law; or
   b. The building sustains both direct physical damage that is covered under this policy and direct physical damage that is not covered under this policy, and the building damage in its entirety results in enforcement of the ordinance or law.
   c. However, if the building sustains direct physical damage that is not covered under this policy, and such damage is the subject of the ordinance or law, then there is no coverage under this endorsement even if the building has also sustained covered direct physical damage.

3. In the situation described in **C.2.b.** above, we will not pay the full amount of loss otherwise payable under the terms of Coverages **A**, **B**, **C** and/or **D** of this endorsement. Instead, we will pay a proportion of such loss, meaning the proportion that the covered direct physical damage bears to the total direct physical damage.

   However, if the covered direct physical damage, alone, would have resulted in enforcement of the ordinance or law, then we will pay the full amount of loss otherwise payable under the terms of Coverages **A**, **B**, **C** and/or **D** of this endorsement.

**D.** We will not pay under Coverage **A**, **B**, **C** or **D** of this endorsement for:


Includes copyrighted material of Insurance Service Office, Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

1. Enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot; or
2. The costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet rot or dry rot.

E. **Coverages**

1. **Coverage A - Coverage For Loss To The Undamaged Portion Of The Building**

   With respect to a covered building that has sustained covered direct physical damage, we will pay under Coverage A for the loss in value of the undamaged portion of the building as a consequence of enforcement of an ordinance or law that requires demolition of undamaged parts of the same building.

   Coverage A is included within the Limit of Insurance shown in the Declarations as applicable to the covered building. Coverage A does not increase the Limit of Insurance.

   The Coinsurance Additional Condition does not apply to the undamaged portion of the building when the Limit of Insurance shown in the Declarations for Coverage A is less than the applicable building Limit of Insurance shown in the Declarations.

2. **Coverage B - Demolition Cost Coverage**

   With respect to a covered building that has sustained covered direct physical damage, we will pay the cost to demolish and clear the site of undamaged parts of the same building, as a consequence of enforcement of an ordinance or law that requires Demolition of such undamaged property.

   The Coinsurance Additional Condition does not apply to Demolition Cost Coverage.

3. **Coverage C - Increased Cost Of Construction Coverage**

   a. With respect to a covered building that has sustained covered direct physical damage, we will pay the increased cost to:

      (1) Repair or reconstruct damaged portions of that building; and/or

      (2) Reconstruct or remodel undamaged portions of that building, whether or not demolition is required

      when the increased cost is a consequence of enforcement of the minimum requirements of the ordinance or law.

      However:

      (1) This coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

      (2) We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

      The Coinsurance Additional Condition does not apply to Increased Cost of Construction Coverage.

   b. When a building is damaged or destroyed and Coverage C applies to that building in accordance with **3.a.** above, coverage for the increased cost of construction also applies to repair or reconstruction of the following, subject to the same conditions stated in **3.a.**:

      (1) The cost of excavations, grading, backfilling and filling;

      (2) Foundation of the building;

      (3) Pilings; and

      (4) Underground pipes, flues and drains.

      The items listed in **b.(1)** through **b.(4)** above are deleted from Property Not Covered, but only with respect to the coverage described in this Provision, **3.b.**

4. **Coverage D - Tenant's Improvements and Betterments**

   With respect to your use interest as tenant in improvements and betterments that have sustained covered direct physical damage, we will pay the increased cost to repair or reconstruct damaged portions of those improvements and betterments when the increased cost is a consequence of enforcement of the minimum requirements of the ordinance or law.

   The Coinsurance Additional Condition does not apply to Tenant's Improvements and Betterments.

F. **Loss Payment**

1. All following loss payment Provisions, **F.2.** through **F.5.**, are subject to the apportionment procedures set forth in Section **C.3.** of this endorsement.
2. When there is a loss in value of an undamaged portion of a building to which Coverage A applies, the loss payment for that building, including damaged and undamaged portions, will be determined as follows:

   a. If the Replacement Cost Coverage Option applies and the property is being repaired or replaced, on the same or another premises, we will not pay more than the lesser of:

Includes copyrighted material of Insurance Service Office, Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

(1) The amount you would actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

(2) The Limit of Insurance for Coverage **A** shown in the Declarations as applicable to the covered building.

**b.** If the Replacement Cost Coverage Option applies and the property is **not** repaired or replaced, or if the Replacement Cost Coverage Option does **not** apply, we will not pay more than the lesser of:

(1) The actual cash value of the building at the time of loss; or

(2) The Limit of Insurance for Coverage **A** shown in the Declarations as applicable to the covered building.

**3.** Loss payment under Coverage **B** - Demolition Cost Coverage will be determined as follows: We will not pay more than the lesser of the following:

**a.** The amount you actually spend to demolish and clear the site of the described premises; or

**b.** The applicable Limit of Insurance shown for Coverage **B** in the Declarations.

**4.** Loss payment under Coverage **C** - Increased Cost of Construction Coverage will be determined as follows:

**a.** We will not pay under Coverage **C**:

(1) Until the property is actually repaired or replaced, at the same or another premises; and

(2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**b.** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay under Coverage **C** is the lesser of:

(1) The increased cost of construction at the same premises; or

(2) The applicable Limit of Insurance shown for Coverage **C** in the Declarations.

**c.** If the ordinance or law requires relocation to another premises, the most we will pay under Coverage **C** is the lesser of:

(1) The increased cost of construction at the new premises; or

(2) The applicable Limit of Insurance shown for Coverage **C** in the Declarations.

**5.** Loss payment under Coverage **D** - Tenant's Improvements and Betterments will be determined as follows:

**a.** We will not pay under Coverage **D**:

(1) Until the property is actually repaired or replaced, at the same or another premises; and

(2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**b.** If the improvements and betterments are repaired or replaced at the same premises, or if you elect to rebuild the improvements and betterments at another premises, the most we will pay under Coverage **D** is the lesser of:

(1) The increased cost of construction at the same premises; or

(2) The applicable Limit of Insurance shown for Coverage **D** in the Declarations.

**c.** If the ordinance or law requires relocation to another premises, the most we will pay under Coverage **D** is the lesser of:

(1) The increased cost of construction at the new premises; or

(2) The applicable Limit of Insurance shown for Coverage **D** in the Declarations.

**G.** The terms of this endorsement apply separately to each building to which this endorsement applies.

**H.** Under this endorsement we will not pay for loss due to any ordinance or law that:

**1.** You were required to comply with before the loss, even if the building was undamaged; and

**2.** You failed to comply with.

**I.** The following definition is added:
"Fungi" means any type or form of fungus, including but not limited to, mold, mildew, mycotoxins, spores, scents or by-products produced or released by any type or form of fungus.

All other policy terms and conditions apply.


Includes copyrighted material of Insurance Service Office, Inc., with its permission.
Copyright, ISO Properties, Inc., 2001